| | |
|---|---|
| CARLA VASQUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 7022 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| THE BOARD OF EDUCATION FOR ) | |
| SCHOOL DISTRICT U-46, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

After suffering two work-related injuries that ultimately required her to have surgery, Plaintiff Carla Vasquez found herself terminated from her job as a bus driver's assistant for Defendant Board of Education for School District U-46 (the "District") because she could not return to work without restrictions and had exhausted a year-long leave of absence to recover from her injuries. Vasquez brings this suit against the District alleging discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1-101 *et seq.*, and retaliatory discharge in violation of the Illinois Workers Compensation Act, 820 Ill. Comp. Stat. 305/4, and Illinois common law. The District has moved to dismiss Vasquez's complaint.[1] Because the Court cannot conclude at this stage that the District's conditional settlement offer cannot as a matter of law be considered retaliatory, the Court allows Vasquez's retaliation claim to proceed to discovery. But Vasquez may only pursue equitable relief on her retaliatory discharge claim because any request for monetary damages is time-barred. The Court also

---

[1] The District originally moved to dismiss all claims, including the discrimination claim. In reply, it acknowledges that its argument concerning the ADA and IHRA discrimination claim is moot based on Vasquez's clarification of dates in her response. As a result, the Court does not substantively address the ADA and IHRA discrimination claim further, and allows that claim to proceed to discovery.

strikes Vasquez's request for punitive damages because the Tort Immunity Act shields the District from such damages.

## BACKGROUND[2]

Vasquez began working for the District as a bus driver's assistant in August 1997. Her job duties mainly involved assisting children with disabilities in boarding, riding, and exiting school transportation vehicles. Vasquez also worked shifts performing bus fleet maintenance for the District. She received an hourly salary, in addition to health and other benefits. At the time the District terminated her, Vasquez typically worked forty hours per week: thirty hours as a driver's assistant earning $15.75 per hour and ten hours performing maintenance services at $16.07 per hour. Vasquez did not receive any negative evaluations from the District. In connection with her employment, Vasquez belonged to the District U-46 Transportation Union (the "Union").

On December 3, 2008, Vasquez sustained injuries to her neck, left shoulder, and arm while securing the wheels of a wheelchair to the floor of a bus. Following District and Union protocols, Vasquez obtained a diagnosis and treatment plan for her injuries and did not work for approximately seven months. She received workers' compensation of $718.04 every two weeks. In July 2009, her doctor authorized her to return to full employment, and she exercised her seniority to select a bus route that did not include any wheelchair-bound students. On December 15, 2009, Vasquez again suffered an injury while working, this time to her neck and left shoulder while attempting to assist a disabled child into her seat. But she continued working while under

---

[2] The facts in the background section are taken from Vasquez's complaint and the exhibits attached thereto and are presumed true for the purpose of resolving the District's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court also considers the attachments to Vasquez's response to the motion to dismiss to the extent the information contained therein is consistent with the allegations in the complaint. *See Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001).

her doctor's care after this injury. She received cortisone shots to help alleviate the pain through December 2011, when the District's workers' compensation claims agent denied continuation of the shots.

On January 7, 2012, Vasquez had an MRI on her left arm and shoulder, which revealed she had tears in her rotator cuff that required surgery. On January 30, her surgeon, Dr. Atluri, authorized her to return to work with certain restrictions prior to the surgery. Vasquez then met with Carin Bjourn, the District's Assistant to the Director of Transportation, on February 13 to discuss the restrictions and upcoming surgery. Bjourn indicated that, per District policy, Vasquez would have to stop working and immediately begin workers' compensation leave because the District did not allow employees to work with restrictions. Vasquez then began receiving workers' compensation checks for $965.06 every two weeks. Although she did not know it at the time, this began a one-year leave-of-absence period, at the end of which the District could terminate her if she could not return to work without restrictions.

Vasquez had surgery on March 14, 2012. On April 10, she informed Bjourn she could return to work with certain restrictions that did not prevent her from performing her job, providing a doctor's note on April 17 indicating she could return to work with restricted use of her affected arm. Bjourn again told Vasquez she could only return to work without any restrictions. This interaction repeated itself monthly between April and November 2012.

On November 29, 2012, Dr. Atluri recommended that Vasquez have elbow surgery to further address issues with Vasquez's arm. The District's workers' compensation carrier refused to authorize the surgery and required Vasquez to obtain an independent medical examination ("IME"). After rescheduling five times, Dr. Anderson conducted the IME on January 17, 2013. Upon receiving the IME report, which evaluated her neck and shoulder instead of her elbow, the

workers' compensation carrier stopped authorizing treatment for Vasquez's shoulder on January 28, 2013. After the carrier realized that the IME should have addressed her elbow, Vasquez received back payments in a lump sum of $5,307.83 for the period covering January 25 to April 19, 2013. Vasquez then had another IME evaluation by Dr. Benson on May 29, who supported the refusal to cover the surgery for her elbow.[3] Her disability payments then stopped as of June 6, 2013 and she was also denied social security disability benefits because her medical records indicated she could work with certain restrictions.

On February 12, 2013, Dr. Atluri again saw Vasquez and provided a note indicating she could return to work with the same restriction on the use of her affected arm. Vasquez delivered this note to the District's human resources department the following day. But that same day, she received a letter informing her that she had exhausted her twelve-month leave of absence, meaning that the District was terminating her because she could not return to work. According to the termination notice Vasquez received, the District would only consider reemployment upon receipt of a physician's release to full duty and an updated employment application.

After the District terminated her, Vasquez sought reinstatement through the Union, but the Union refused to file a grievance on her behalf. Vasquez then filed the grievance without the Union's assistance, but the District denied it at every step. She received a settlement offer from the District on October 3, 2013, providing Vasquez with the ability to return to work upon release to full duty while allowing the District the right to refuse to provide reasonable accommodations in her attempt to do so. While negotiations continued, Vasquez filed a discrimination charge under the ADA with the U.S. Equal Employment Opportunity

---

[3] Dr. Atluri performed the elbow surgery on May 9, 2014 without compensation.

4

Commission ("EEOC") on December 6, 2013.[4] Vasquez ultimately rejected the District's settlement offer because it did not allow for reasonable accommodations and required her to dismiss and release the District from all claims, including her EEOC charge and claims under the ADA. On April 8, 2014, Vasquez learned that the District would give her her job back if she dropped her EEOC discrimination charges. Vasquez continued to pursue the charges, however, receiving a right to sue letter from the Department of Justice on April 22, 2016.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[4] Vasquez initially faxed a letter to the EEOC on December 6, 2013, which the EEOC treated as the date she initiated her charge. She later formally filled out the charging document at the EEOC's offices on December 31, 2013. Her complaint states that she filed the charge on December 30, but the documents attached to the complaint indicate that the charge was filed on December 6, and Vasquez's response clarifies the error in the allegations of the complaint. In its reply, the District indicates that it accepts as true Vasquez's assertion that her letter on December 6 constitutes a charge for purposes of determining the timeliness of the charge, thus mooting the District's initial argument that her ADA discrimination and retaliation claims are time-barred. *See* Doc. 18 at 1 n.1.

## ANALYSIS

I. **Retaliation Claim (Count I)**

The District argues that Vasquez's retaliation claim fails because the District had the right to condition its settlement offer on Vasquez's release of claims against it. As such, the District argues that Vasquez cannot demonstrate that the inclusion of this condition in the settlement offer constituted retaliation for her filing a charge with the EEOC. Essentially, the District argues that Vasquez cannot establish an adverse employment action because she had no right to reinstatement and so conditioning her rehire on the release of claims does not constitute an adverse employment action because rehire is a discretionary benefit. *See Sicher v. Merrill Lynch*, No. 09 C 1825, 2011 WL 892746, at *3–4 (N.D. Ill. Mar. 9, 2011). Vasquez, on the other hand, appears to contend that because the District violated the ADA in terminating her when she could perform her job with certain accommodations, the District had to rehire her and so could not condition that rehire on a release of claims. *See Montgomery v. DePaul Univ.*, No. 10 C 78, 2012 WL 3903784, at *12 (N.D. Ill. Sept. 7, 2012) ("[A]n employer's refusal to hire or rehire an applicant is a classic adverse action that, when done on a prohibited basis, violates Title VII."); *cf. Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1032–33 (7th Cir. 2004) (noting that "an adverse employment action does not include an employer's refusal to grant an employee a discretionary benefit to which she is not automatically entitled" and finding that, at summary judgment, plaintiff failed to provide evidence to suggest that she was entitled to a new position so that the defendant's failure to create such a new position could be considered an adverse action).

The cases upon which the District relies typically involve severance payments or similar discretionary benefits. *See E.E.O.C. v. CVS Pharm., Inc.*, 809 F.3d 335, 341 (7th Cir. 2015)

("[C]onditioning benefits on promises not to file charges with the EEOC is not enough, in itself, to constitute 'retaliation' actionable under Title VII."); *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005) (rejecting claim that employer engaged in retaliation by terminating all of its insurance agents and requiring those who wanted to remain in an independent contractor relationship to sign a release of claims). Moreover, they typically involve decisions at the summary judgment stage, made upon a factually developed record. *See Hansen v. Vanderbilt Univ.*, 961 F. Supp. 1149, 1150–51 (M.D. Tenn. 1997) (finding at summary judgment stage that "requiring an employee to withdraw an EEOC claim in order to have a recommended settlement award implemented is not an adverse employment action"). Here, however, the Court cannot definitively determine at the motion to dismiss stage whether the District's refusal to rehire Vasquez absent her withdrawing the EEOC charge amounted to an adverse employment action. Vasquez challenges her termination, claiming that it violated the ADA, which, if found true, would mean that she had the right to work for the District. Alternatively, discovery could demonstrate that Vasquez could not perform the essential functions of her job, in which case the District had no obligation to rehire her. *See James v. Hyatt Regency Corp.*, 707 F.3d 775, 781 (7th Cir. 2013) ("Employers are under no obligation to restore an employee to his or her position if the employee is unable to perform the essential functions of the job."). Vasquez is entitled to explore whether she had the right to be rehired or whether such a decision was completely discretionary, in which case her retaliation claim would fail for lack of an adverse employment action. At this stage, the Court will allow it to proceed to discovery, after which the parties can present more developed arguments on the issue at summary judgment.

## II. Retaliatory Discharge Claim (Count III)

The District argues that Vasquez's retaliatory discharge claim is time-barred. The statute of limitations is an affirmative defense that need not be anticipated in the complaint in order to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But that is not the case where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). Here, the District contends that Vasquez's retaliatory discharge claim is governed by a one-year statute of limitations provided by the Tort Immunity Act. 745 Ill. Comp. Stat. 10/8-101.

The parties disagree as to whether the Tort Immunity Act's one-year statute of limitations applies to a retaliatory discharge claim, and, indeed, the law is not entirely clear on the issue. *See Williams v. Office of the Chief Judge of Cook County, Ill.*, 839 F.3d 617, 627 (7th Cir. 2016) ("It is unclear under Illinois law whether this statute of limitations applies to retaliatory discharge claims under the Illinois Whistleblower Act, although one appellate court seemed to suggest that it might." (citing *Taylor v. Bd. of Educ. of City of Chicago*, 10 N.E.3d 383, 395, 2014 IL App (1st) 123744, 381 Ill. Dec. 298 (2014)). The majority of courts appear to agree that the Tort Immunity Act applies to retaliatory discharge claims to the extent a plaintiff seeks monetary damages. *See Williams v. Office of the Chief Judge of Cook County, Ill.*, No. 13 C 1116, 2015 WL 2448411, at *13 (N.D. Ill. May 21, 2015) (collecting cases), *aff'd*, 839 F.3d 617. *But see Zelman v. Hinsdale Twp. High Sch. Dist. 86*, No. 10 C 00154, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (finding that Tort Immunity Act's one-year statute of limitations did not apply to

retaliatory discharge claim because "the Tort Immunity Act immunizes government entities from liability for torts committed by *employees* and retaliatory discharge claims are the result of wrongdoing by an *employer*"). *Zelman* relied on a broad reading of § 2-109 of the Tort Immunity Act, which provides blanket immunity to a public entity for its employee's own torts and which Illinois courts have found not to apply to retaliatory discharge claims. *See id.* (citing *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236, 231 Ill. 2d 111, 324 Ill. Dec. 446 (2008)). But the fact that one section of the Tort Immunity Act does not apply to retaliatory discharge claims does not foreclose the applicability of other sections, such as the statute of limitations. *See Kirley v. Bd. of Educ. of Maine Twp. High Sch. Dist. 207*, 2013 WL 6730885, at *11 & n.6 (N.D. Ill. Dec. 20, 2013) (distinguishing *Zelman* and applying one-year statute of limitations found in Tort Immunity Act to retaliatory discharge claim); *Boyles v. Greater Peoria Mass Transit Dist.*, 499 N.E.2d 435, 438, 113 Ill. 2d 545, 101 Ill. Dec. 847 (1986) (retaliation claim for filing worker's compensation claim was not exempt from Tort Immunity Act). Therefore, the Court will apply the one-year statute of limitations to Vasquez's request for monetary damages connected to her retaliatory discharge claim. The District terminated Vasquez on February 13, 2013, but she filed suit over three years later, on July 6, 2016. The delay in filing means that her request for monetary damages in connection with her retaliatory discharge claim is time-barred. *See Kirley*, 2013 WL 6730885, at *11–12.

The Tort Immunity Act's statute of limitations, however, does not preclude Vasquez's retaliatory discharge claim to the extent she seeks back pay and front pay, forms of equitable relief. *See Stringer v. City of Lake Forest*, No. 16 C 8991, 2017 WL 75741, at *1 (N.D. Ill. Jan. 7, 2017) (declining to dismiss retaliatory discharge claim where plaintiff sought reinstatement, back pay, and front pay, all forms of equitable relief, meaning that the Tort Immunity Act did not

apply because it does not "affect[ ] the right to obtain relief other than damages against a local public entity or a public employee" (quoting 745 Ill. Comp. Stat. 10/2-101)); *Kirley*, 2013 WL 6730885, at *12 (allowing plaintiff to proceed with retaliatory discharge claim seeking reinstatement and injunctive relief).

## III. Punitive Damages

Finally, the District requests that the Court strike Vasquez's request for punitive damages because, pursuant to the Tort Immunity Act, the District has immunity from such damages. *See* 745 Ill. Comp. Stat. 10/2-102; *Hayes v. Elementary Sch. Dist. No. 159*, No. 10 C 7095, 2011 WL 1059890, at *5 (N.D. Ill. Mar. 21, 2011). Vasquez does not respond to this aspect of the District's motion to dismiss, effectively conceding the issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). The Court thus strikes her request for punitive damages from the complaint.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the District's motion to dismiss [10]. The Court strikes Vasquez's request for monetary damages with respect to her retaliatory discharge claim. The Court also strikes Vasquez's request for punitive damages. The Court orders the District to answer the remaining allegations of the complaint by April 27, 2017.

Dated: April 5, 2017

_____
SARA L. ELLIS
United States District Judge